UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| JEFFREY B. JORDEN, | | ) | |
| | | ) | |
| | Plaintiff, | ) | 09 C 6814 |
| | | ) | 10 C 3144 |
| vs. | | ) | Judge Feinerman |
| | | ) | |
| UNITED STATES OF AMERICA, | | ) | |
| | | ) | |
| | Defendant. | ) | |

**M**EMORANDUM **O**PINION AND **O**RDER

Jeffrey Jorden, a driver employed by Eagle Express Lines, Inc., brought this lawsuit

against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 *et seq*.,

alleging that he suffered injuries while making a delivery to the Glenview Post Office in

Glenview, Illinois, due to negligence by the United States Postal Service. The United States has

moved for summary judgment, contending that it is immune from tort liability because Jorden is

a "borrowed employee" of the Postal Service under the Illinois Workers' Compensation Act

("IWCA"), 820 ILCS 305/1 *et seq*. The motion is denied for two separate reasons.

The first reason is that the United States has violated Local Rule 56.1. To support its

view of the facts, the United States' initial brief cites to raw record materials rather than to its

Local Rule 56.1(a) statement. It has long been held that this violates Local Rule 56.1. *See

Daoust v. Abbott Labs.*, 2006 WL 2711844, at *4 (N.D. Ill. Sept. 19, 2006) ("Citing directly to

the record in the memorandum statement of facts, as [the movant] does here, rather than citing to

its 56.1(a)(3) statement, negates the purpose of the summary judgment exercise."); *Alvi v. Metro.

Water Reclamation Dist. of Greater Chi.*, 2006 WL 1762032, at *2 (N.D. Ill. June 23, 2006)

("Mr. Alvi's response memorandum is written without ever referencing the Rule 56.1 factual filings, and instead improperly cites to raw discovery record material. This citation practice is materially improper."); *Madaffari v. Metrocall Cos. Grp. Policy GL*, 2005 WL 1458071, at *1 (N.D. Ill. June 15, 2005) ("when citing to the record in their legal memoranda, parties are required to cite to the numbered paragraphs of their Local Rule 56.1 statements and not to the underlying parts of the record"); *Ciesielski v. Hooters of Am., Inc.*, 2004 WL 1699020, at *1 (N.D. Ill. July 28, 2004) ("In their summary judgment briefs, both parties cited directly to the record rather than to their Rule 56.1 statements. This blatant violation of the Local Rules is improper."); *Denari v. Genesis Ins. Co.*, 2003 WL 22964371, at *1 n.3 (N.D. Ill. Dec. 15, 2003) ("The Court further notes that in his memorandum of law, Denari cites directly to the record rather than to his Rule 56.1 statement. This is improper."); *Malec v. Sanford*, 191 F.R.D. 581, 586 (N.D. Ill. 2000) ("[c]itations in the fact section should be to the 56.1(a) or (b) statement of facts only, … [not] directly to pieces of the record"). This violation of Local Rule 56.1, standing alone, warrants the denial of summary judgment. *See Cichon v. Exelon Generating Co.*, 401 F.3d 803, 809 (7th Cir. 2005) ("[w]e have ... repeatedly held that a district court is entitled to expect strict compliance with [Local] Rule 56.1") (internal quotation marks omitted, brackets in original); *Sledge v. Bellwood Sch. Dist. 88*, 2011 WL 2457920, at *2 (N.D. Ill. June 17, 2011) (denying summary judgment motion due to movant's violation of Local Rule 56.1); *Eva's Bridal Ltd. v. Halanick Enters., Inc.*, 2010 WL 2035720, at *5 (N.D. Ill. May 19, 2010) ("Failure to comply with Local Rule 56.1 is grounds for denial of a summary judgment motion.").

Second, putting aside Local Rule 56.1, summary judgment is denied on the merits based on the record materials tendered by the parties. The FTCA allows for damage suits against the United States for personal injury or property damage "caused by the negligent or wrongful act or

omission" of any federal government employee "while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). In an FTCA suit, "the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim." 28 U.S.C. § 2674. In Illinois, where the Postal Service's alleged negligence occurred, the IWCA "provides the exclusive recovery against employers and 'borrowing employers' for workers injured in the course of their employment." *Luna v. United States*, 454 F.3d 631, 632 (7th Cir. 2006). Because the remedy provided by the IWCA is exclusive, an employee's employer and borrowing employer (if any) are immune from tort liability arising from such an injury. *See id*. at 634; *Belluomini v. United States*, 64 F.3d 299, 302 (7th Cir. 1995).

The United States' summary judgment motion turns on whether the Postal Service was the borrowing employer of Jorden within the meaning of the IWCA. There are two alternative tests for determining whether a particular relationship constitutes borrowed employment under the IWCA: the "control test" and the "statutory test." The United States concedes that it cannot satisfy the control test. To satisfy the statutory test, the United States must demonstrate that: "(1) a substantial portion of the alleged loaning employer's business must consist of furnishing employees to do the work of other employers; (2) the loaning employer must pay the employee's wages even though that employee is working for another employer; and (3) the borrowing employer must be operating under the [IWCA]." *Belluomini*, 64 F.3d at 302; *see also Luna*, 454 F.3d at 637.

Analysis here may be limited to the first element of the test. That element was satisfied in *Belluomini*, where the United States claimed to be the borrowing employer of a court security officer employed by a private contractor called General Security Services Corporation ("GSSC"). 64 F.3d at 302. GSSC's vice president testified at his deposition that "a substantial portion of [GSSC]'s business involves *supplying security personnel* to the government." *Id*. at 302-03 (emphasis added, brackets in original). This "unrebutted" evidence, the Seventh Circuit held, "establishes that a substantial portion of GSSC's business consists of furnishing employees to other employers." *Id*. at 303; *see also id*. at 302 (noting that "[t]he Marshals Service hired GSSC to supply Court Security Officers (CSOs) to assist in the protection of the federal judiciary"). The first element of the statutory test also was satisfied in *Luna*, where the United States claimed to be the borrowing employer of an instructor employed by a private contractor called Resource Consultants, Inc. ("RCI"). The evidence showed that RCI was "in the business of *supplying employees* to governmental agencies," with Luna having been "assigned to the Great Lakes Naval Base as part of a team of employees RCI provided to the Navy." 454 F.3d at 633 (emphasis added). Given this evidence, the Seventh Circuit found it "undisputed that a substantial part of [RCI's] business involved hiring, procuring, or furnishing employees to do jobs for" other employers. *Id*. at 637.

Unlike the circumstances presented in *Belluomini* and *Luna*, the summary judgment record here, viewed with all genuine factual disputes resolved in Jorden's favor, indicates that Eagle Express was in the business of furnishing inter-post-office transportation services, not employees, to the Postal Service. Eagle Express' relationship with the Postal Service is governed by a contract under which Eagle Express agreed to haul mail shipments between post offices. Doc. 81. The contract describes Eagle Express' duties as "carrying and/or handling the

-4-

United States Mail." *Id*. at 2. The contract's terms and conditions, set forth on a form drafted by the Postal Service, state that "[t]his is a fixed price contract for highway transportation *service*." *Id*. at 49, ¶ 2.1 (emphasis added). The terms and conditions refer to the "supplier," Eagle Express, as the "corporation that will be providing the *service* advertised in this solicitation." *Id*. at 51, ¶ 2.2.1 (emphasis added). The contract further provides that Eagle Express drivers need not wear driver uniforms and are to be issued a "Non Postal Service Contractor Employee" identification badge. *Id*. at 34, 36.

These contract provisions defeat the United States' submission (Doc. 99 at 6-8) that Eagle Express, indisputably and as a matter of law, furnished the Postal Service with employees rather than with inter-post-office mail transportation services. The point is confirmed by the United States' own Local Rule 56.1(a) statement, which asserts that "Eagle Express is one of the contractors who has been awarded multiple HCR contracts with the Postal Service *to deliver mail* between postal facilities," that "Eagle Express' *primary business* is *transporting mail* for the Postal Service," and that "Eagle Express employed driver Jeffrey Jorden who was assigned to perform the *mail delivery services required by [the] contract*." Doc. 73 at ¶¶ 6-7, 13 (emphasis added). The deposition testimony of two Postal Service contracting officers further supports the proposition that Eagle Express furnished the Postal Service with transportation services, not employees. One of the officers testified that "the amount of drivers can vary throughout the term of the contact, so it's the service we're contracting for," and that he "do[es]n't look at Eagle as an employer who provides employees or personnel; … [but rather] as somebody that provides a service to the government for a price." Doc. 102-1 at 19. The other officer agreed that the Postal Service was not concerned with "how many … employees it took … as long as the routes got serviced per the contract," Doc. 102-4 at 8, which is inconsistent

with the notion that Eagle Express provided employees rather than services.  And while the discussion could stop here, that notion is further undermined by the fact that Jorden was not assigned exclusively to the Postal Service account, but hauled freight for other Eagle Express customers as well.  Doc. 79-3 at 7-8.

Because the record precludes the United States from indisputably satisfying the first element of the statutory test—that "a substantial portion of" Eagle Express' "business … consist[s] of furnishing employees to do the work of other employers," *Belluomini*, 64 F.3d at 302—and because the United States does not attempt to satisfy the control test, the United States is not entitled to summary judgment on the ground that it was Jorden's borrowing employer under the IWCA and thus entitled to tort immunity under the ICWA.  Accordingly, the United States' summary judgment motion is denied on the merits as well due to its violation of Local Rule 56.1.

October 11, 2011

United States District Judge